UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| GENEVA ELAINE TEALER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:11-CV-025-BG |
| | ) | ECF |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Geneva Elaine Tealer appeals a decision of the Defendant Commissioner of Social Security to deny her applications for disability insurance benefits and supplemental security income. The Administrative Law Judge (ALJ) determined that Tealer was capable of performing sedentary work with limitations, that she was capable of performing her past work, and that she was therefore not disabled. The Appeals Council denied review, and Tealer filed this appeal. She brings eight points of error in support of her appeal.

**I.      The ALJ's Evaluation of Tealer's Allegations of Pain**

Tealer claims she is limited in her ability to work because of diabetes, hypertension, peripheral artery disease, stomach problems, and arthritis. Tealer argues that the regulations require the ALJ to consider all medical and non-medical evidence, including evidence related to the intensity and persistence of her symptoms. She claims that the ALJ failed to properly consider her pain as either a severe impairment or as a non-exertional limitation of function.

Contrary to Tealer's allegations, the ALJ properly evaluated the severity of Tealer's pain and the limitations her pain would impose upon her ability to function. The ALJ found that Tealer's

degenerative disc disease and mild stenosis were severe impairments. (Tr. 11.) He also evaluated the limitations her pain imposed upon her ability to function, and he provided a summary of her allegations of pain and the medical evidence regarding her pain. (Tr. 11–13.) Based on the medical evidence and Tealer's allegations, he found that she retained the ability to perform only sedentary work that would not involve constant handling and that would require only occasional stooping, crouching, and crawling. (Tr. 13.)

The ALJ's decision is supported by substantial evidence. Tealer reported on application documents that she experienced pain, cramping, and swelling in her legs and knees and burning in her feet. (Tr. 116, 134, 146.) She claimed that when she stood or sat for too long her knees and ankles swelled and became numb and that her back hurt if she lifted more than ten pounds. (Tr. 115.) Tealer complained during an examination that she experienced leg pain and left knee pain that was worse when standing, and diagnostic testing showed changes associated with osteoarthritis in her left knee. (Tr. 243, 300.) On the other hand, Tealer reported that she experienced no problems using her hands and that she walked for exercise, cleaned her home, and prepared meals. (Tr. 116, 146.) During a physical examination she exhibited 5/5 strength in her shoulders, hands, and hips. (Tr. 241.) Tealer reported to the examining physician that she was capable of standing for thirty minutes, and the examining physician stated that lifting, carrying, and handling objects was not a problem for Tealer and that her knee pain was the only condition that would pose a problem for her during the performance of work-related activity. (Tr. 242.)

The court sympathizes with Tealer; however, the mere existence of pain does not establish disability. *Owens v. Heckler*, 770 F.2d 1276, 1281 (5th Cir. 1995) (citation omitted). On the other hand, pain may constitute a non-exertional factor that limits the range or types of jobs a claimant can

2

perform. *Carter v. Heckler*, 712 F.2d 137, 142 (5th Cir. 1983). Therefore, although an ALJ may find that pain does not preclude a claimant from working, the ALJ must consider the claimant's complaints of pain as a factor that would limit the types of work the claimant can perform. *Id*. The ALJ did so in this case. He limited Tealer to sedentary work, which involves sitting and occasional walking and standing, lifting no more than ten pounds at a time, and occasionally lifting or carrying articles such as docket files, ledgers, and small tools. 20 C.F.R. §§ 404.1567(a), 416.967(a) (2011). By limiting Tealer to sedentary work, the ALJ accommodated the increase in pain Tealer experienced from standing. By limiting Tealer to sedentary work that would require only occasional stooping, crouching, and crawling, the ALJ accommodated the early arthritis and pain Tealer experienced in her knee.

## II.     The ALJ's Findings Regarding Specific Impairments

Tealer claims the ALJ used his own lay opinion to reach medical conclusions. She faults the ALJ for concluding: (1) that she does not require an assistive device; (2) that there is no evidence of end organ damage as a result of her diabetes; (3) that her hypertension is controlled; and (4) that there is no angiographic evidence of stenosis. The ALJ's determination that Tealer does not require an assistive device is not grounds for reversal. Although Tealer testified that she sometimes used a cane when cooking and showering, she acknowledged that no physician prescribed the cane. (Tr. 29.) In addition, a physician who examined Tealer in January 2008 noted that Tealer "could ambulate effectively without assistive devices, such as a cane or crutch." (Tr. 242.) Thus, the ALJ's conclusion that Tealer did not need an assistive device is supported by medical evidence.

The ALJ's conclusion that Tealer does not suffer from end organ damage as a result of her diabetes is also supported by medical evidence. State agency physician Terry Collier, M.D., noted the absence of end organ damage. (Tr. 245.)

The ALJ's conclusion that Tealer's hypertension is controlled is also supported by medical evidence. (Tr. 209, 211, 214–15, 249, 300.)

Lastly, the ALJ's determination that there is no angiographic evidence of stenosis is supported by medical evidence. A cardiologist noted the absence of aortic stenosis. (Tr. 322.) Tealer argues that the ALJ's finding of no stenosis on Page 4 of his decision conflicts with his finding of mild bilateral stenosis on Page 5 of his decision. This argument must be rejected, however, because the ALJ's finding on Page 4 of his decision relates to the absence of evidence of aortic stenosis; the ALJ's finding on Page 5 of his decision relates to an MRI that showed mild stenosis in Tealer's lumbar spine. (Tr. 12–13; *compare* Tr. 305, 322.)

### III.  The ALJ's Credibility Determination

Tealer cites 20 C.F.R. § 404.1529(c)(2) and argues that the ALJ must not reject the claimant's testimony about symptoms solely because objective medical evidence does not substantiate the claimant's statements. The ALJ ran afoul of the regulations, Tealer contends, because he found her not credible on grounds that her statements were not supported by objective findings.

As Tealer argues, the regulations direct that the ALJ must not reject a claimant's allegations about his pain solely because the medical evidence does not substantiate the allegations. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). However, the regulations also direct that the ALJ must consider the extent to which there are conflicts between a claimant's statements and the rest of the evidence, including the claimant's medical history, medical signs and laboratory findings, and statements by treating or examining physicians or psychologists and other persons. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). A claimant's symptoms of pain will be determined to diminish work capacity to the

4

extent that the alleged functional limitations and restrictions due to pain can reasonably be accepted as consistent with the objective medical evidence and other evidence. *Id.* As discussed in Section I of this Report and Recommendation, the ALJ credited Tealer's allegations to the extent that they were consistent with the medical evidence and adjusted her residual functional capacity accordingly.

### IV.     The ALJ's Step Three Determination

Tealer argues that the ALJ is required to determine whether the combination of the claimant's impairments is medically equivalent to a listed impairment in the regulations and that the ALJ did not do so in her case. Tealer's claim is without merit. The ALJ found that Tealer does not have an impairment or combination of impairments that meets or medically equals a listed impairment. (Tr. 11.) He also specifically noted that he considered the listed impairments that address the musculoskeletal, cardiovascular, and endocrine systems and that he considered her obesity in conjunction with his evaluation. (Tr. 11.)

Tealer's attorney acknowledged at the hearing that Tealer's diabetes was "not up to the ruling level." (Tr. 21.) Further, Tealer has not identified which listed impairment she believes her impairments equaled, nor has she pointed to medical evidence in the record that would demonstrate equivalency to any listed impairment. The claimant bears the burden of providing medical evidence that supports each of the criteria for the equivalent impairment determination. *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). Tealer has not met that burden.

### V.     The ALJ's Step Four Determination

Tealer claims that the ALJ's questioning of the vocational expert demonstrates that if she were limited to sedentary work that involved only occasional handling and fingering, that she would be unable to perform the least taxing of her past work — work as a nut sorter. She claims the ALJ should have therefore found that she was unable to perform her past work.

The vocational expert testified that the job of nut sorter involved *frequent* but not *constant* reaching and handling and fingering. (Tr. 32.) The ALJ found that Tealer could not do work that involved *constant* handling. (Tr. 13.) In addition, the evidence demonstrates that Tealer did not suffer from limitations in her upper extremities. She stated on application documents that her physical problems did not limit her ability to use her hands. (Tr. 116, 146.) Medical examination revealed 5/5 grip strength and an examining physician noted that Tealer did not appear to experience problems with reaching, handling, and fingering or with lifting, carrying, and handling objects. (Tr. 181, 241–42.) The foregoing substantial evidence supports a conclusion that Tealer did not suffer from limitations that would prevent her from engaging in work that involves frequent reaching, handling, and fingering.

## VI. The ALJ's Findings Regarding Vocational Factors

Tealer cites 20 C.F.R. § 404.1520(g) and claims that the ALJ is required to consider the clamant's age and education in combination with the claimant's RFC and work history to determine whether the claimant is disabled. She claims the ALJ made no findings regarding her age or education level.

Section 404.1520(g) directs that the ALJ must consider vocational factors, including the claimant's age, education, and past work experience when determining whether the claimant can make an adjustment to other work. *See* 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). Section 404.1520(g), therefore, applies to determinations made at the fifth step of the sequential evaluation process. In this case, the ALJ did not reach the fifth step of the sequential evaluation; he was not required to determine whether Tealer could make an adjustment to other work because he determined that Tealer was capable of performing her past work at the fourth step of the sequential evaluation. (Tr. 15.)

**VII.   The ALJ's Evaluation of Physicians' Opinions**

Tealer argues that the ALJ is required to consider factors found in the regulations when considering a treating source's opinion and give good reasons for the weight he gives to any opinion. She claims that "[n]either the ALJ nor the Appeals Council gave any reason for the weight afforded to various medical opinions." (Pl.'s Br. 3.) Tealer, however, has not identified the "various medical opinions" the ALJ and the Appeals Council failed to properly consider. Further, a review of the record and the ALJ's summary of the record demonstrates that he did not ignore any of the medical evidence.

**VIII.   The Commissioner's Evaluation of Evidence in the Record**

Tealer claims that the ALJ engaged in a pattern of "picking and choosing" only evidence that supported his decision and that he arbitrarily rejected and ignored uncontroverted medical evidence. She further claims that her attorney submitted exhibits at the hearing that were not incorporated into the administrative record and therefore not considered by the ALJ. Finally, she claims that the Appeals Council did not consider mental health records that were submitted in April 2010 after the ALJ rendered his decision in May 2009.

Remand should not issue for the purpose of requiring the Commissioner to review the evidence Tealer claims was not considered. In regard to the evidence Tealer claims the ALJ did not incorporate into the record, according to the transcript of the hearing, the ALJ accepted records Tealer's attorney submitted the morning of the hearing and incorporated them into the record. (Tr. 20– 21.) Nonetheless, even if the ALJ did not, in fact, incorporate evidence Tealer's attorney submitted on the day of the hearing, there is no evidence that Tealer brought the matter to the attention of the Appeals Council.

7

A reviewing court may "order additional evidence to be taken before the Commissioner of Social Security." 42 U.S.C. § 405(g) (2011); *see also Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984) (remand may issue under § 405(g) for the ALJ's failure to consider evidence available at the time of the hearing). However, remand for the purpose of requiring the Commissioner to consider evidence is not justified unless the plaintiff shows good cause for failing to incorporate it into a prior proceeding. *See Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994) (holding that the plaintiff must first show good cause and then show that the evidence is material and new). Tealer has not made such a showing. There is no indication in the Appeals Council's decision that Tealer submitted with her appeal the records she claims the ALJ omitted. In addition, she did not provide this court with the records she claims the ALJ and the Appeals Council did not consider. Tealer has, therefore, failed to provide evidence from which the court might determine whether remand is appropriate.

Finally and significantly, Tealer has not explained how she was prejudiced by the errors she alleges and, because she did not submit the evidence at issue to this court, the court cannot determine whether her claim was prejudiced.

## IX.  Conclusion

For the foregoing reasons, the undersigned has determined that the Commissioner's decision is supported by substantial evidence and that it was reached through the proper application of law. It is therefore recommended that the United States District Court **AFFIRM** the decision of the Commissioner and **DISMISS** Tealer's Complaint.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file

specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2011); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: January 19, 2012.

NANCY M. KOENIG
United States Magistrate Judge